FILED - KZ
August 2. 2010 4:01 PM

TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
bd / ___ Scanned by AK / 8-3

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

| | | |
|---|---|---|
| WALKERS LANDING PARTNERS LLC., on | * | |
| Behalf of Itself and All Others Similarly | * | File No.  1:10-cv-761 |
| Situated, | * | Robert J. Jonker |
| | * | HON.  U.S. District Judge |
| Plaintiff, | * | |
| | * | |
| vs | * | |
| | * | |
| | * | |
| ENBRIDGE ENERGY PARTNERS LP, and | * | |
| ENBRIDGE INC., | * | |
| | * | |
| Defendants. | * | |

**CLASS ACTION COMPLAINT**

Plaintiff Walkers Landing Partners, LLC, individually and as representative of a

Class, as defined herein, brings this class action against Defendants Enbridge Energy Partners

LP and Enbridge Inc. as follows:

**NATURE OF THE ACTION**

1.  Plaintiff brings this class action on behalf of itself, and all others similarly

situated, against Defendants for losses and damages arising out of the catastrophic and avoidable

oil spill that occurred in the Defendants' Lakehead pipeline on or about July 26, 2010 in Talmadge

Creek, a tributary of the Kalamazoo River located Marshall Township, Michigan. This leak has

spilled close to one million gallons of oil which has migrated into the Kalamazoo River and

damaged the surrounding properties.

2.  On or about July 26, 2010 Defendants' Lakehead pipeline leaked near a

pump station in Marshall, Michigan. U.S. regulators had warned Defendants in January that they

were not adequately monitoring the corrosion of this pipeline. The Pipeline and Hazardous

1

Materials Safety Administration at the U.S. Department of Transportation informed the Defendants' Chairman, Terry Gill, in writing on Jan. 21, 2010, that the monitoring of corrosion in Line 6B of the Lakehead pipeline was out of line with U.S. regulations. Notwithstanding this warning, Line 6B of the Lakehead pipeline began leaking on or about July 26, 2010 and spewed close to a million gallons of oil into Talmadge Creek, a tributary of the Kalamazoo River, before the leak was detected and stopped.

3.       As of July 27, 2010, oil was reported to have spread sixteen (16) miles into the Kalamazoo River downstream of the spill. Currently, the Environmental Protection Agency estimated the spill at more than one million (1,000,000) gallons of oil, saying it had traveled 25 miles downstream. The State of Michigan estimates it has traveled thirty-five (35) miles downstream. The Kalamazoo River eventually bisects the city of Kalamazoo and meanders to Saugatuck, where it empties into Lake Michigan. The oil as of July 29, 2010 was about eighty (80) miles from Lake Michigan and moving toward the lake. Kalamazoo County's Office of Emergency Management has declared a local state of emergency in response to the tragic leak.

4.       Defendant Enbridge has a history of disregarding environmental regulations, as affiliates have previously been cited for violating environmental regulations in the Great Lakes region. For example, Houston-based Enbridge Energy Co. spilled almost 19,000 gallons of crude oil onto Wisconsin's Nemadji River in 2003. Another 189,000 gallons of oil spilled at the company's terminal two miles from Lake Superior, though most was contained. In 2007, two spills released about 200,000 gallons of crude in northern Wisconsin as Enbridge was expanding a 320-mile pipeline.

2

**PARTIES**

5. Plaintiff, Walkers Landing Partners, LLC, is a Michigan limited liability company. The only asset of Walkers Landing Partners, LLC is a 15 ½ acre parcel that fronts directly on the Kalamazoo River. It has approximately 610 feet of direct riverfront, approximately 1000 feet of wetland frontage, and an additional 2000 plus feet of creek frontage that runs into the Kalamazoo River. The street address of this property is: 6375 Riverside Drive, Saugatuck Township, Michigan, 49453. Plaintiff has been harmed and suffered damages as a result of the contamination caused by the spill and the events alleged herein.

6. Defendants herein are:

(a) Defendant Enbridge Energy Partners LP, a Delaware limited partnership, headquartered in Houston, TX and doing business in the State of Michigan and throughout the United States. Enbridge Energy Partners LP, is the owner of the Lakehead pipeline system.

(b) Defendant Enbridge Inc., is a Canadian corporation, in Calgary, Alberta and focused on three core businesses: crude oil and liquids pipelines, natural gas transportation and distribution, and green energy. The company was initially incorporated as Interprovincial Pipe Line (IPL) in 1949, shortly after Canada's first major oil discovery at Leduc, Alberta. Enbridge operates the world's longest crude oil and liquids pipeline system, located in both Canada and USA. Enbridge's U.S. operations are indirect, wholly owned subsidiaries of Enbridge Inc.

**JURISDICTION AND VENUE**

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and it is a class action brought by citizens of a State that is different from the State where at least one of the Defendants is incorporated or does business. This Court

3

also has jurisdiction over this action pursuant to 28 U.S.C. § 1332 based on diversity of citizenship and the amount in controversy.

8. This Court's venue over this action is proper under 28 U.S.C. § 1391 (a)(2) because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated within this District.

## FACTUAL ALLEGATIONS

9. Line 6B is a 30-inch, 190,000 barrels per day (bpd) line transporting light synthetics, heavy and medium crude oil from Griffith, Ind., to Sarnia, Ontario. It is part of the Defendants' Lakehead pipeline. The 1,900-mile Lakehead System is the U.S. portion of the world's longest petroleum pipeline and has operated for more than 60 years.

10. The Pipeline and Hazardous Materials Safety Administration at the U.S. Department of Transportation informed the Defendants in January of 2010, its monitoring of corrosion in Line 6B of the Lakehead pipeline was out of line with U.S. regulations. This is not the first time Defendants have been warned about the operation and maintenance of its pipelines. Enbridge Inc. or its affiliates have been cited for 30 enforcement actions since 2002 by the Pipeline and Hazardous Materials Safety Administration — the U.S. Department of Transportation's regulatory arm.

11. The danger and delicacy of the operation and maintenance of underwater pipelines is well known by all of the Defendants, and within the industry. The failure to properly maintain, inspect, and monitor the Lakehead pipeline is believed to be the cause of the leak and catastrophic oil spill.

12. As the oil continues to migrate the Kalamazoo River and make landfall it will cause severe damage to the delicate wetlands that line the coast destroying the habitats where

4

fish spawn and mature. Such devastation at the literal source of life for so many species will severely damage the livelihoods of those who rely on these waterways.

13. Defendants were aware at all relevant times hereto that their operations and acts and/or omissions described herein created an unreasonable risk of harm and knew that catastrophic environmental destruction and economic loss would occur if the Lakehead pipeline were to leak. The risks of operating and maintaining an underwater pipeline are well known to Defendants.

14. Despite Defendants' knowledge of the dangers associated therewith, they failed to take appropriate measures to prevent damage to Plaintiff, the Class Members and the marine, coastal, and estuarine areas, where Plaintiff and the Class Members own property as well as work and earn a living.

15. The oil spill and the resulting contamination have caused and will continue to cause damage to property, loss of revenue to individuals and businesses that cannot use the Kalamazoo River and shorelines recreationally or to work and to earn a living. There are many other potential effects from the oil spill that have not yet become known, and Plaintiff reserves the right to amend this Complaint once additional information becomes available.

16. Defendants were indifferent to the risks known to them and Defendants acted intentionally with knowledge that their acts would probably result in injury or in such a way as to allow an inference of a reckless disregard of the probable consequences of their acts. Therefore, Defendants are also liable to Plaintiff for gross negligence and/or willful misconduct. The oil spill that is causing damage to Plaintiff was proximately caused by Defendants' gross negligence and/or willful misconduct.

5

## CLASS DEFINITION

17. Plaintiff brings this action on behalf of itself and all others similarly

situated, who are members of the following Class:

> All persons and companies who claim injury and/or damages as a
> result of the July 26, 2010-July 27, 2010 oil leak in the Lakehead
> pipeline which occurred in Marshall, Michigan.

18. Excluded from the Class are:

(a)    the officers and directors of any of Defendants;

(b)    any judge or judicial officer assigned to this matter and his or her immediate

family;

(c)    any individual who has claims for personal physical, bodily injury as a result

of the oil spill that is the subject of this action; and

(d)    any legal representative, successor, or assign of any excluded persons or

entities.

## CLASS ACTION ALLEGATIONS

19. Plaintiff's claims are made on behalf of itself and all others similarly

situated under Rule 23 of the Federal Rules of Civil Procedure.

### Numerosity of the Class

20. On information and belief, the Class consists of hundreds or thousands of

individuals and/or businesses who have been legally injured by the disaster, making joinder

impracticable.

6

## Typicality and Commonality

21. The claims of the representative Plaintiff are typical of the claims of the Class in that the representative Plaintiff, like all Class Members, have suffered adverse effects proximately caused by the disaster.

22. Furthermore, the factual bases of Defendants' misconduct are common to all Class Members and represent a common thread of misconduct resulting in injury to all members of the Class.

## Adequacy

23. Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff is an owner of property affected by this oil spill, has suffered injury or loss as a result of the oil spill, is committed to zealously pursuing this action and effectively protecting the rights and interests of the Class Members. Plaintiff has retained counsel with substantial experience in prosecuting environmental, mass tort, and complex class actions, including actions involving environmental contamination and, specifically, catastrophic oil spills.

24. Plaintiff and its counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor their Counsel have interests adverse to those of the Class.

## Predominance of Common Questions of Fact and Law

25. There is a well-defined community of interest in that the questions of law and fact common to the Class predominate over questions affecting only individual Class Members and include, but are not limited to, the following:

(a) Whether Defendants' actions alleged herein caused residents in the region to lose the use and enjoyment of their coastal waters and other property;

7

(b)     Whether Defendants' actions alleged herein caused a public nuisance;

(c)     Whether Defendants caused and/or contributed to the oil spill;

(d)     Whether Defendants were negligent in the design, maintenance,

manufacture, and/or operation of the of its pipeline;

(e)     Whether Defendants knew or should have known of the risk of a major

failure of its pipeline and failed to address that risk resulting in the oil spill;

(f)     Whether Defendants knew of, or should have utilized, all available safety

mechanisms to prevent the leak and oil spill;

(g)     Whether Defendants failed:

(i)     to operate the Lakehead pipeline in a safe manner;

(ii)     to properly inspect the Lakehead pipeline to assure that its
equipment was were fit for their intended purposes;

(iii)     to promulgate, implement and enforce rules and regulations
pertaining to maintenance of the Lakehead pipeline, which, if they had been
promulgated, implemented and enforced, would have averted the leak and oil spill;

(iv)     to adhere to applicable safety, construction, maintenance and/or
operating regulations, including, but not limited to regulations designed to prevent
the discharge of oil;

(v)     to properly design and/or engineer the Lakehead pipeline;

(vi)     to take appropriate action to avoid or mitigate the leak and oil spill;

(vii)     to take appropriate action to ascertain that the Lakehead pipeline and
its equipment were free from defects and/or were in proper working order;

(viii)     to timely warn;

(ix)     to provide all reasonable cooperation and assistance requested by
the responsible officials in connection with the clean-up and removal activities;

(x)     to take all reasonable, available, and necessary measures to stop the
oil leak and to prevent additional damage from the spill; and

8

(xi) to timely bring the oil release under control, to prevent the spill from spreading, and to provide appropriate equipment and resources to stop migration of the spill.

(h) Whether Defendants knew or should have known that their activities would cause damage to Plaintiff;

(i) Whether Defendants engaged in other acts of negligence;

(j) Whether Defendants acted maliciously or with reckless disregard to the risk of a major failure of its pipeline, valves, and other machinery and materials; and

(k) The amount of damages Plaintiff and the Class Members should receive in compensation.

## Superiority

26. Absent class treatment, Plaintiff and Class Members will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct.

27. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Without a class action, individual Class Members would face burdensome litigation expenses, deterring them from bringing suit or adequately protecting their rights. Because of the ratio of the economic value of the individual Class Members' claims in comparison to the high litigation costs in complex environmental cases such as this, few could likely seek their rightful legal recourse. Absent a class action, Class Members would continue to incur harm without remedy.

28. The consideration of common questions of fact and law will conserve judicial resources and promote a fair and consistent resolution of these claims.

9

## FIRST CLAIM FOR RELIEF

### Nuisance

29.    Plaintiff, on behalf of itself and the Class Members, reallege each and every allegation set forth above.

30.    By virtue of the conduct alleged herein, including the discharge of oil into the waters, including the Kalamazoo River, which has spread and/or threatens to spread to the shoreline and surrounding areas, Defendants have created a nuisance.

31.    Defendants' inadequate manufacture, maintenance and operation of the Lakehead pipeline was unreasonable.

32.    The Plaintiff and Class Members are each entitled to a shoreline and property that is free of oil contamination.

33.    Defendants have unreasonably interfered with the use and enjoyment of uncontaminated shoreline and property of Plaintiff and Class members.

34.    As a direct and proximate result of the Defendants' creation of a nuisance, Plaintiff and the class have suffered unreasonable and substantial annoyances and unreasonable or substantial interference with the use and enjoyment of their properties, including but not limited to, extensive destruction and contamination of their real and personal property and environment, and will continue to suffer property, economic and other damages and are entitled to recover money damages, including but not limited to, diminution of value to property and business, loss of income and revenue, exemplary damages, and any incidental or consequential damages resulting from Defendants' conduct.

35.    Defendants are liable jointly and severally for Plaintiff's damages resulting from Defendants' creation of a nuisance.

10

36.     As a direct and proximate result of the permanent nuisance created by Defendants, Plaintiff and Class Members have suffered actual and threatened legal injury for which there is no adequate remedy at law, making preliminary and final injunctive relief appropriate.

## SECOND CLAIM FOR RELIEF

### Trespass

37.     Plaintiff, on behalf of itself and the Class Members, reallege each and every allegation set forth above.

38.     Defendants discharged a polluting matter beyond the boundary of the Plaintiff's and Class Members' property in such a manner that it was reasonably foreseeable that the pollutant would, in due course, invade Plaintiff's and the Class Members' property and cause harm.

39.     By discharging polluting matter, Defendants entered, invaded, and intruded on the properties of Plaintiff and the Class Members without privilege, permission, invitation, or justification.

40.     Defendants had a duty to use reasonable care not to enter, intrude on, or invade Plaintiff's and Class Members' properties. Defendants also owed a duty to Plaintiff's and members of the Class to exercise reasonable care in the manufacture, maintenance, and operation of the Lakehead pipeline.

41.     Defendants had a heightened duty of care to Plaintiff and the Class because of the great danger associated with underwater pipelines.

42.     Defendants breached the duty they owed to Plaintiff and members of the Class when they failed to exercise reasonable care in the manufacture, maintenance and operation

11

of the Lakehead pipeline, which conduct resulted in entry, intrusion, or invasion of Plaintiff's and Class Members' properties.

43.    Defendants knew or should have known that their conduct would foreseeably result in a disastrous leak and oil spill, causing damage to the properties and economic interests of persons in the area affected by the spill.

44.    As a direct and proximate result of Defendants' trespass, Plaintiff's and the Class Members have suffered legal injury and damages, in an amount to be proven at trial, including but not limited to, property damage, diminution of value of real estate, loss of income, other economic loss, and exemplary damages.

## THIRD CLAIM FOR RELIEF

### Wantoness

45.    Plaintiff, on behalf of itself and the Class Members, reallege each and every allegation set forth above.

46.    Defendants owed a duty to Plaintiff and all Class members to exercise reasonable care in the manufacture, maintenance and operation of the Lakehead pipeline.

47.    Defendants had a heightened duty of care to the Plaintiff and the Class Members because of the great danger associated with underwater pipelines and the risk of corrosion and leaks to said pipelines.

48.    Defendants breached their legal duty to Plaintiff and the Class, failed to exercise reasonable care, and acted with reckless, willful, and wanton disregard for the property and economic interests of others, including Plaintiff and the Class Members, in the negligent manufacture, maintenance and/or operation of the Lakehead pipeline.

12

49.     Defendants knew or should have known that their wanton or reckless conduct would foreseeably result in a disastrous leak and oil spill, causing damage to the property and economic interests of individuals and businesses in the area affected by the oil spill.

50.     As a direct and proximate result of Defendants' wanton or reckless conduct, Plaintiff and Class Members have suffered legal injury and damages, including but not limited to, diminution of value of real estate, loss of income, and other economic loss, loss of enjoyment of real property, and exemplary damages.

## FOURTH CLAIM FOR RELIEF

### Negligence

51.     Plaintiff, on behalf of itself and the Class Members, reallege each and every allegation set forth above.

52.     The leak and resulting oil spill were caused by the joint negligence of the Defendants.

53.     Upon information and belief, Plaintiff alleges that the disaster was the result of Defendants' joint negligence in:

(a)     Failing to properly monitor, maintain and/or operate the Lakehead pipeline;

(b)     Failing to properly inspect the Lakehead pipeline to assure that all equipment and was fit for its intended purpose;

(c)     Failing to promulgate, implement, and enforce proper rules and regulations to ensure the safe operations of the Lakehead pipeline which would have presented the disaster;

(d)     Failing to take appropriate action to avoid or mitigate the accident;

(e)     Failing to ensure that the Lakehead pipeline and its equipment were free from defects and/or in proper working order;

13

(f)     Failing to timely warn;

(g)     Failing to timely bring the oil release under control;

(h)     Failing to provide appropriate disaster prevention equipment;

(i)     Acting in a manner that justifies imposition of punitive damages; and

(j)     Such other acts and omissions as will be shown at the trial of this matter.

54.     The injuries to Plaintiff and the Class Members were also caused by or aggravated by the fact that Defendants failed to take necessary actions to mitigate the danger associated with their operations.

55.     Furthermore, the disaster would not have occurred had the Defendants exercised a high degree of care. Plaintiff, therefore, plead the doctrine of *res ipsa loquitur.*

56.     Plaintiff and the Class Members are entitled to a judgment finding Defendants liable to Plaintiff and the Class Members for damages, including exemplary damages, suffered as a result of Defendants' acts and omissions.

## FIFTH CLAIM FOR RELIEF

### Gross Negligence

57.     Plaintiff, on behalf of itself and the Class Members, reallege each and every allegation set forth above.

58.     Defendants owed a duty to all Plaintiff and Class Members to exercise reasonable care in the manufacture, maintenance, and operation of the Lakehead pipeline.

59.     Defendants had a heightened duty of care to all Plaintiff and the Class Members because of the great danger associated with operation and maintenance of an underwater pipeline.

14

60.     Defendants breached their legal duty to Plaintiff and the Class, failed to exercise reasonable care, and acted with reckless, willful, and wanton disregard for the property business and livelihood of others, including Plaintiff and the Class Members, in the negligent manufacture, maintenance, and/or operation of the Lakehead pipeline.

61.     Defendants knew or should have known that their wanton or reckless conduct would foreseeably result in a disastrous leak and oil spill, causing damage to the economic interests of individuals and businesses in the area affected by the oil spill.

62.     As a direct and proximate result of Defendants' gross negligence Plaintiff and Class Members have suffered legal injury and damages, in an amount to be proven at trial, including, but not limited to, loss of livelihood, loss of income, other economic loss, and exemplary damages.

## SIXTH CLAIM FOR RELIEF

### Negligence *Per Se*

63.     Plaintiff, on behalf of itself and the Class Members, reallege each and every allegation set forth above.

64.     Defendants' conduct with regard to the manufacture, maintenance, and/or operation of an underwater pipeline is governed by numerous state and federal laws, and permits issued under the authority of these laws.

65.     These laws and permits create statutory standards that are intended to protect and benefit Plaintiff and the Class Members.

66.     Defendants' violations of these statutory standards constitute negligence *per se* under Michigan Law.

15

67.     Defendants' violations of these statutory standards proximately caused

Plaintiff's and the Class Members' injuries, warranting compensatory and exemplary damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class Members demand judgment against Defendants,

jointly and severally, as follows:

A.      An order certifying the Class as set forth herein, appointing Plaintiff as Class

Representative, and appointing undersigned counsel as counsel for the Class;

B.      Economic and compensatory damages in amounts to be determined at trial;

C.      Exemplary damages;

D.      Pre-judgment and post-judgment interest at the maximum rate allowable by law;

E.      Attorneys' fees and costs; and

F.      Such other and further relief available under all applicable state and federal laws

and any relief the Court deems just and appropriate.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demand a trial by jury.

DATED: August 2, 2010                    Respectfully Submitted,

Barry R. Conybeare, Esq. (P52056)
Conybeare Law Office, P.C.
519 Main Street
St. Joseph, MI 49085
Phone: (269) 983-0561
Fax: (269) 983-5327
barry@conybearelaw.com

16